## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EARVIN GIBBS, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| VS. | )   CASE NO. 07-CV-422-FHM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| DEFENDANT. | ) |

## OPINION AND ORDER

Plaintiff, Earvin Gibbs, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1]  In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1]  Plaintiff's January 26, 2005 applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration.  A hearing before an Administrative Law Judge (ALJ) was held November 28, 2006.  By decision dated January 25, 2007, the ALJ entered the findings which are the subject of this appeal.  The Appeals Council denied review of the findings of the ALJ on June 28, 2007.  The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 43 years old at the time of his applications. [R. 60, 363].  He claims to have been unable to work since June 1, 2002, due to asthma, lung problems, stomach, anxiety, anger problems and depression. [R. 60, 66, 108, 363].  At the hearing, Plaintiff's attorney amended his alleged disability onset date to February 24, 2005. [R. 393].  The ALJ determined that Plaintiff has severe impairments consisting of asthma and an affective disorder [R. 15], but that he retains the residual functional capacity (RFC) to perform sedentary work activity, avoiding all exposure to fumes and chemicals, consisting of simple uncomplicated tasks with routine supervision and no contact with the general public. [R. 16, 19].   Based upon the testimony of a vocational expert (VE), the ALJ found that Plaintiff is unable to perform his past relevant work but that there are other jobs available in the economy in significant numbers that Plaintiff could perform with that RFC. [R.19-20].  He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 21].  The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ failed: 1) to properly consider the treating sources' opinions; 2) to properly consider Plaintiff's credibility; and 3) that his RFC assessment is not supported by substantial evidence. [Dkt. 14].  For the reasons discussed below, the Court reverses and remands the decision to the Commissioner for reconsideration.

**Medical Records**

Plaintiff was diagnosed in August 2002 with pulmonary interstitial fibrosis incurred while on-the-job as a foundry supervisor. [R. 132-137].  There is no dispute that Plaintiff has a severe impairment of asthma with related breathing problems.  Because the issues raised in this case relate only to Plaintiff's mental impairment, discussion of the medical record is limited to the evidence regarding Plaintiff's mental functional abilities.

During the time that Plaintiff received follow-up health care for occupational asthma from Blackhawk Health Center (Blackhawk), he began complaining of "nerves" [R. 157] and was prescribed Celexa[2] which was noted on January 13, 2004, to have improved symptoms of depression, including mood swings and irritability. [R. 156].

On January 28, 2004, Plaintiff was evaluated by Janet K. Dean, a psychological clinician, for purposes of determining eligibility for rehabilitation services. [R. 189-193]. Ms. Dean concluded that Plaintiff's primary mental health issue presenting an impediment to successful competitive employment appeared to be antisocial personality disorder with paranoid, schizoid and borderline traits, chronic but currently abated by antidepressant medication. [R. 192].  She recommended Plaintiff be referred for

---

[2] Celexa is indicated for the treatment of depression. *See* Physicians' Desk Reference (PDR), 62nd ed. (2008) 1161-1162.

treatment of the personality disorder, particularly related to anger management issues.
[R. 193].

Plaintiff reported to the Blackhawk care providers on August 30, 2004, that the
Celexa was not helping. [R. 148].  His dosage was increased on October 25, 2004. [R.
146].   He was still taking Celexa, Zantac and Albuterol Inhaler[3] when last seen at
Blackhawk on December 20, 2004. [R. 145].

On February 24, 2005, Plaintiff commenced paperwork for treatment assessment
at Creoks Mental Health Services, Inc. with Jessica Coker, B.S., a case manager.  [R.
305].  Plaintiff received assistance with the paperwork and then was counseled by Ms.
Coker. [R. 292-304].

Plaintiff underwent a Mental Status Examination by Denise LaGrand, Psy.D., on
May 6, 2005. [R. 194-199].  Plaintiff's diagnosis was Dysthymia[4] with a  prognosis for
a good chance for improvement with adequate treatment. [R. 197-198].  No significant
problems with persistence and pace were noted and memory problems did not appear
to interfere with Plaintiff's ability to function. [R. 199].  Plaintiff's ability to understand,
remember and carry out instructions was low average. *Id.*   The psychologist
commented that Plaintiff's application for disability seemed to be based more on

---

[3] Zantac is indicated for treatment of ulcers, gastroesophageal reflux disease (GERD) and
erosive esophagitis. PDR, *id.*, at 1634-1635. Albuterol Inhalation Aerosol is indicated for prevention and
relief of bronchospasm in patients with reversible obstructive airway disease and for the prevention of
exercise-induced bronchospasm. PDR, *id*, at 3001-3002.

[4] Dysthymia is a mood disorder characterized by depressed feeling and loss of interest or
pleasure in one's usual activities and in which the associated symptoms have persisted for more than
two years but are not severe enough to meet the criteria for major depression. *See* Dorlands' Ill. Med.
Dictionary (Dorlands'), 28th ed. (1994) 519.

Case 4:07-cv-00422-FHM Document 17 Filed in USDC ND/OK on 08/26/08 Page 5 of 16

physical factors "and this should be taken into account when determining his eligibility for SSI/Disability." *Id.*

A Mental RFC Assessment checklist form was filled out by J.E. Ponder, M.D., a non-examining consultative physician, on June 9, 2005. [R. 207-210]. Dr. Ponder assessed no significant limitation except in the ability to understand, remember and carry out detailed instructions and ability to interact appropriately with the general public, for which he indicated "marked" limitations; and in Plaintiff's ability to work in coordination with or proximity to others without being distracted by them and ability to accept instructions and respond appropriately to criticism from supervisors, for which he was found to have "moderate" limitations. [R. 207-208].

Dr. Ponder also prepared a Psychiatric Review Technique form.[5] [R. 211-224]. Plaintiff's functional limitations were evaluated under the listing for 12.04 Affective Disorders, Dysthymic Disorder. [R. 211, 214]. He was determined to have "mild" restriction of activities of daily living and difficulties in maintaining social functioning. [R. 221]. Difficulties in maintaining concentration, persistence or pace were deemed to be "moderate." *Id.* Dr. Ponder cited insufficient evidence to rate episodes of decompensation, each of extended duration. *Id.*

---

[5] Under the regulations, when evaluating mental impairments, the agency must follow a "special technique." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The degree of functional loss resulting from the impairment must be rated in four areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. §1520a(b)(3). The pertinent findings and conclusions required in the application of the technique, previously used to complete a PRT form, supported by a narrative rationale, are now required in the body of the decision. 20 C.F.R. § 404.1520a; *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746; 50, 757 (Aug. 12, 2000). "The decision must include a specific finding as to the degree of limitation in each of [those] functional areas." Id. §§ 404.1520a(e)(2), 416.920a(e)(2).

Plaintiff continued seeing Jessica Coker on a regular basis through July 2006. [R. 234-268, 265-268, 270-289].  Ms. Coker's progress notations reflect that Plaintiff was taught to recognize and avoid anger triggers, to cope with stress and to decrease anger episodes with communication, relaxation and breathing techniques. *Id.*   Ms. Coker also advocated for Plaintiff with local churches, agencies and utilities and directed him to community services and food banks. *Id.*   During this time, Plaintiff received medication refills and treatment for physical ailments, including asthma exacerbation, at Sapulpa Indian Health Center. [R. 307-348].

The record contains a medical progress note by Satwant Tandon, M.D.,a physician at the Creoks Mental Health facility, dated October 15, 2005, which reflects continuation of Zoloft,[6] increased dosage of Trazadone and addition of Depakote.[7] [R. 269].

On January 3, 2006, Ms. Coker noted Plaintiff experienced some symptoms of depression 3 of 7 days a week, that he was overwhelmed by day-to-day activities, that he used marijuana 4 out of 7 days a week, that he was unable to breathe most days without his inhaler, that he had no friends and did not want any friends, that he enjoyed taking care of his 17 dogs, that he had paid off court fines but still could not afford a driver's license, and that he relied on his mother and the state for support. [R. 238-243].

---

[6] Zoloft is indicated for the treatment of major depressive disorder in adults. PDR, 62nd ed. (2008) at 2578.

[7] Trazadone is an antidepressant indicated for treatment of depression. PDR, 53rd ed. (1999) 540.  Depakote (divalproex sodium) is indicated for the treatment of manic episodes associated with biopolar disorder. PDR, *id.*, at 430.

Ms. Coker prepared a Mental RFC form on June 12, 2006. [R. 357-359].  She indicated Plaintiff had "moderate" limitations in ability to understand and remember simple instructions and to adhere to a schedule and maintain regular attendance. [R. 357-358].  He had "marked" limitations in the ability: to remember locations and work-like procedures; to maintain attention and concentration for extended periods in order to perform detailed tasks; to work close to others without being distracted; to interact appropriately with the public; to work with others without causing distractions; and to maintain socially appropriate behavior and basic standards of neatness and cleanliness. [R. 357-358]. Ms. Coker assessed "extreme" limitations in Plaintiff's ability: to perform at a consistent pace without an unreasonable number or length of rest periods; to handle normal work stress; and to accept instructions and criticism from supervisors. *id.*

The record contains three checklist forms titled: Medical Source Opinion of Ability To Do Work-Related Activities (Mental) prepared by Satwant Tandon, M.D. [R. 262-264, 235-237, 360-362].  The first form, dated November 29, 2005, indicated "marked" limitations in all areas under the category for Understanding and Memory.  Limitations ranging from "moderate" to "extreme" were assessed in the category for Attention and Concentration and also in the category for Social Interaction.  The diagnosis was: Major Depressive Disorder. [R. 264].

The second Mental RFC form signed by Dr. Tandon on June 15, 2006, indicated improvement in virtually all the categories and there were no "extreme" limitations assessed for any work activities. [R. 235-237].

Dr. Tandon noted review of Plaintiff's treatment plan and medication adjustments on October 3, 2006. [R. 350].  She reported Plaintiff was compliant with medications, that his response to medications was "depressed" but that there were no side effects. *Id.*

On October 9, 2006, Ms. Coker wrote the following letter:

> Mr. Gibbs is currently receiving help from our medication clinic for Major Depressive Disorder.  He has been attending services at CREOKS since 5/1/05.  He is unable to work due to diagnosed illness.   Because of his mental health conditions he is unable to be around others due to mood shifts reported by clinic doctor.

[R. 349].

The third Mental RFC form  filled out and signed by Dr. Tandon is dated November 14, 2006. [R. 360-362].  In the category for Understanding and Memory, Dr. Tandon indicated Plaintiff had: a "slight" limitation in ability to remember locations and work-like procedures; no limitation in ability to understand and remember simple instructions; and "slight" limitation in ability to understand and remember detailed instructions. [R. 360].  Under the Attention and Concentration category, Dr. Tandon indicated "marked" limitations in ability to maintain attention and concentration for extended periods in order to perform simple tasks and also for detailed tasks. [R. 360]. She assessed: a "moderate" limitation in Plaintiff's ability to adhere to a schedule and maintain regular attendance; a "moderate to marked" limitation in ability to work close to others without being distracted; a "marked" limitation in ability to perform at a consistent pace without an unreasonable number or length of rest periods; and a "moderate" ability to handle normal work stress. [R. 360]. Under the Social Interaction

8

category, Dr. Tandon indicated: a "slight" limitation in ability to interact appropriately with the public; a "moderate" limitation in ability to accept instructions and criticism from supervisors; and "no" limitations in abilities to work with others without causing distractions or to maintain socially appropriate behavior and basic standards of neatness and cleanliness. [R. 361].   Signs and symptoms identified were: appetite disturbance; sleep disturbance; social withdrawal or isolation; psychomotor activity; feelings of guilt/worthlessness; mood disturbance; emotional lability; decreased energy and anhedonia or pervasive loss of interests; difficulty concentrating or thinking; and hostility or irritability. [R. 237].

## The ALJ's Decision

The ALJ found Plaintiff's severe impairments of asthma and an affective disorder limit him to lifting and/or carrying 10 pounds; standing and/or walking about 2 hours in an 8-hour workday; sitting for a total of about 6 hours in an 8-hour workday and requires him to avoid all exposure to fumes and chemicals. [R. 16].  He found Plaintiff is able to perform simple uncomplicated tasks with routine supervision and no contact with the general public. *Id.*

The ALJ summarized Plaintiff's testimony and the medical evidence, including Ms. Coker's June 16, 2006 letter and October 9, 2006 Mental RFC form. [R. 19].  He reported Dr. Tandon's findings as set forth in her final Medical Source statement, acknowledging it as "opinion evidence." [R. 19].  The ALJ explained his analysis of the evidence as follows:

> Although it appears likely with the claimant's diagnosis that
> he is markedly limited in his ability to maintain attention and
> concentration for extended periods in order to perform

> detailed tasks and moderately to markedly limited in his
> ability to work close to others without being distracted, the
> undersigned finds that the claimant is able to maintain
> attention and concentration for extended periods in order to
> perform simple tasks.  After all, at the hearing, the claimant
> testified that he is building his own house.  Therefore, little
> weight is given to that portion of Dr. Tandon's opinion.

[R. 19].   He concluded that Plaintiff can perform simple uncomplicated tasks with

routine supervision and that an RFC requiring no contact with the general public would

allow for Plaintiff's affective disorder and difficulties dealing with people. [R. 19].

## Discussion

Plaintiff first complains that the ALJ did not consider Ms. Coker's opinion

regarding his limitations. [Dkt. 14, p. 8].   He contends the ALJ failed to weigh Ms.

Coker's opinion in accordance with Social Security Ruling 06-3p. *See* Social Security

Ruling 06-03p, *Titles II and XVI: Considering Opinions and Other Evidence From Sources*

*Who are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on*

*Disability bo Other Governmental and Nongovernmental Agencies*, 2006 WL 2329939

(S.S.A. Aug. 9, 2006) (the Ruling).   The Commissioner responds that the ALJ was not

required to give Ms. Coker's opinion weight because she was not an acceptable

medical source. [Dkt. 15, p. 7].

The Ruling identifies "other sources" from whom evidence may be used to show

the severity of the individual's impairment and how it affects the individual's ability to

function. *See* SSR 006-3p, at *2.   Licensed clinical social workers and therapists are

included in the list of "other medical sources." *Id.*  "Non-medical sources" include public

and private social welfare agency personnel and rehabilitation counselors. *Id.*   The

Ruling explains that opinions from "other medical sources" may reflect the source's

judgment about some of the same issues addressed in medical opinions from "acceptable medical sources" including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s) and physical and mental restrictions. *Id.* at *5.  With regard to opinion evidence from "non-medical sources" who have seen the individual in their professional capacity, the weight accorded such evidence will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications and the issue(s) that the opinion is about. *Id.* at *4.  The Ruling instructs the adjudicator to consider all relevant evidence in an individual's case record, including opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources." *Id.* at *6.  The adjudicator generally should explain the weight given to opinions from these "other sources" or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. *Id.* at *6.

It is not clear from the record whether Ms. Coker's role as a "case manager" is equivalent to any of the medical sources who are not "acceptable medical sources" but whose opinions are to be weighed as evidence from "other medical sources" as required by the Ruling.[8]  Nonetheless, even if Ms. Coker is determined to be a "non-medical source," her opinion and her counseling notations, which were a substantial portion of the Creeks records, would still constitute evidence that the ALJ was required to consider. *See* SSR 06-3p * 2.  The ALJ mentioned Ms. Coker's letter and Mental RFC form but he

---

[8]  The ALJ referred to Ms. Coker as a "social worker" at the hearing. [R. 387, 388].  Plaintiff and his attorneys called her a "therapist." [R. 392, 406].

did not further address either in his decision.  Upon remand, the ALJ should explain what impact Ms. Coker's counseling notations and her opinion regarding Plaintiff's functional abilities had upon his evaluation of the severity of Plaintiff's mental impairment and the functional limitations imposed by that impairment.

The second part of Plaintiff's complaint regarding the ALJ's treatment of the medical evidence involves the opinion evidence from Dr. Tandon, Plaintiff's treating physician at Creoks. [Dkt. 14, p. 8; Dkt. 16, p. 2]. The ALJ acknowledged Dr. Tandon's status as an acceptable medical source whose opinion was entitled to consideration but he did not give Dr. Tandon's opinion the weight generally accorded a "treating physician's opinion."  *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)  (treating physician's opinion which reflects a judgment about the nature and severity of the claimant's impairments is entitled to controlling weight if supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record); 20 C.F.R. § 404.1527(a)(2); 404.1527(d)(2).  Instead, the ALJ accepted a portion of Dr. Tandon's opinion and gave the remaining portion "little weight." [R. 19].  The Court finds the ALJ failed to set forth specific, legitimate reasons for doing so.  *See Watkins v. Barnhart*, 350 F.3d 1297, 2003 WL 22855009, at *2 (10th Cir. Dec. 2, 2003) (ALJ "may reject treating physician's opinion outright only on basis of contradictory medical evidence and not due to own credibility judgments, speculation or lay opinion" ) (*citing McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted).

The ALJ said "it appears likely" that Plaintiff has "marked" limitations in ability to maintain attention and concentration for extended periods in order to perform detailed

12

tasks and that Plaintiff has "moderate to marked" limitations in ability to work close to others without being distracted. [R. 19].  This finding comports with Dr. Tandon's third assessment in those two areas. [R. 360].  The Court notes, however, that the ALJ did not include limitations with regard to working "close to others" in his RFC finding.  Upon remand, the ALJ must resolve this apparent inconsistency in his decision.

Citing Plaintiff's testimony that he is building his own house as conflicting evidence, the ALJ rejected Dr. Tandon's finding of "marked" limitation in ability to maintain attention and concentration for extended periods in order to perform simple tasks. [R. 19].  The testimony to which the ALJ referred consists of the following:

> A.   I go outside.  I got a house I've been trying to work on
>        for two years.
> Q.   What?  Are you building a house?
> A.   I'm trying to.
> Q.   You're trying to build a house?
> A.   Yes sir.  We've been living in an RV for working on two years.
> Q.   How big a house are you trying to build?
> A.   It'll be a 20' by 30' whenever I get finished.
> Q.   How much work do you do on it every day?
> A.   I don't work on it every day.
> Q.   Oh.
> A.   If I work on it, it'll be three to four hours, and then the next day I'll
>        be wore out, you know, like if I have to cut boards and stuff and
>        breathing the sawdust.  That wears me out, and the next day I
>        might sleep most of the day after that.

[R.400-401].  The ALJ did not elaborate as to how this evidence demonstrates Plaintiff's ability to engage in gainful work activities on a sustained basis or how it contradicts medical findings regarding Plaintiff's ability to maintain attention and concentration for extended periods in order to perform simple tasks. *See Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (at step five, Commissioner must show claimant can perform other work on a sustained basis) (citing *Huston v. Bowen*, 838 (F.2d 1125, 1132 (10th Cir.

1988)).  This was the only reason the ALJ gave for rejecting that portion of Dr. Tandon's opinion, which the Court finds is insufficient.

In addition, the ALJ did not incorporate any RFC limitations in Plaintiff's ability to perform at a consistent pace without an unreasonable number or length of rest periods, for which Dr. Tandon had assessed a "marked" limitation. [R. 360].  Nor did he include the "moderate" limitations Dr. Tandon indicated in Plaintiff's ability to adhere to a schedule and maintain regular attendance, to handle normal work stress or accept instructions and criticism from supervisors. [R. 360-361].  The ALJ did not offer any explanation as to how he weighed those findings.   In his response brief, the Commissioner identified what he describes as "other, more detailed, medical evidence" that conflicts with Dr. Tandon's findings.  However, that analysis does not appear in the ALJ's decision. That the record contains evidence that may support a specific factual finding cannot substitute for the finding itself. *Allen v. Barnhart*, 357 F.3d 1140, 1144-45 (10th Cir.2004). "[W]e are not in a position to draw factual conclusions on behalf of the ALJ." *Drapeau*, 255 F.3d at 1214.

Moreover, the opinions by Ms. Dean, Dr. LaGrand and Dr. Ponder, cited by the Commissioner as contradictory evidence, are not inconsistent with Dr. Tandon's opinion that Plaintiff has moderate limitations in ability to accept instructions and criticism from supervisors.   Ms. Dean recommended Plaintiff undergo treatment for an antisocial personality disorder which presented an impediment to successful competitive employment. [R. 192-193].  Dr. LaGrand determined Plaintiff's ability to deal with the public was fair but his ability to handle the stress of a work setting and deal with supervisors or co-workers was "low average." [R. 198].  Dr. Ponder, a non-examining,

14

consultative physician assessed "marked" limitations in Plaintiff's ability to interact appropriately with the general public and "moderate" limitations in ability to accept instructions and respond appropriately to criticism from supervisors. [R. 208].   A moderate impairment is not the same as no impairment at all. *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

The Tenth Circuit has made it clear that the ALJ is not to pick and choose from the medical opinions before him and that the Court is not to engage in a post hoc effort to salvage a decision that suffers from such a defect. *Haga*, 482 F.3d at 1208 (ALJ is not entitled to pick and choose through uncontradicted medical opinion, taking only parts that are favorable to a finding of nondisability).  As in *Haga*, the ALJ failed to explain his apparent rejection of the limitations imposed by Plaintiff's treating physician in maintaining attention and concentration for extended periods in order to perform simple tasks, to perform at a consistent pace without an unreasonable number or length of rest periods, to adhere to workplace schedules and maintain regular attendance, to handle normal work stress and to accept instructions and criticism from supervisors. As a result, the Court finds this case must be remanded for reconsideration of the medical evidence and for a clear explanation of how that evidence is weighed in assessing Plaintiff's RFC.  Because the findings at subsequent steps in the evaluative sequence may be impacted after reconsideration of the medical evidence, the Court does not address Plaintiff's remaining allegations of error in this case.

The decision of the Commissioner finding Plaintiff not disabled is REVERSED and REMANDED to the Commissioner for reconsideration consistent with this Order. In remanding this case, the Court does not suggest that the record is incomplete, nor

dictate any result, but does so simply to assure that the correct legal standards are invoked in reaching a decision based on the facts of this case. *Huston,* 838 F.2d at 1132.

SO ORDERED this 26th day of August, 2008.


*Frank H. McCarthy*

**FRANK H. McCARTHY**
UNITED STATES MAGISTRATE JUDGE